**Electronically Filed
Intermediate Court of Appeals
30518
30-MAR-2012
08:32 AM**

NO. 30518

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
KEVIN C. METCALFE, Defendant-Appellant.

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 09-1-215K)

MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Ginoza, JJ.)

Defendant-Appellant Kevin C. Metcalfe (Metcalfe) appeals from the March 25, 2010 judgment entered by the Circuit Court for the Third Circuit (circuit court).[1] Plaintiff-Appellee State of Hawai'i (State) charged Metcalfe by amended complaint with one count of Murder in the Second Degree in violation of Hawaii Revised Statutes (HRS) §§ 707-701.5(1)[2] (1993 Repl.) and

---

[1] The Honorable Ronald Ibarra presided.

[2] HRS § 707-701.5(1) provides in relevant part:

[§707-701.5] **Murder in the second degree.** (1) Except as provided in section 707-701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.
. . .

706-660.1(1)[3] (1993 Repl.) (Count I) and one count of Carrying or Use of Firearm in the Commission of a Separate Felony in violation of HRS § 134-21(a)[4] (Supp. 2006) (Count II). After a jury trial, Metcalfe was found guilty of manslaughter in Count I and guilty as charged in Count II. The circuit court sentenced Metcalfe to an indeterminate term of twenty years incarceration in both counts, to run concurrently with each other.

On appeal, Metcalfe asserts the following points of error: (1) the circuit court erred in denying his motion to dismiss; (2) the circuit court plainly erred in allowing improper lay opinion testimony of Dr. Anthony Manoukian (Dr. Manoukian) and Detective Walter Ah Mow (Det. Ah Mow), where the prosecution

---

[3] HRS § 706-660.1(1) provides in relevant part:

**§706-660.1 Sentence of imprisonment for use of a firearm, semiautomatic firearm, or automatic firearm in a felony.** (1) A person convicted of a felony, where the person had a firearm in the person's possession or threatened its use or used the firearm while engaged in the commission of the felony, whether the firearm was loaded or not, and whether operable or not, may in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be a follows:
  (a)   For murder in the second degree and attempted murder in the second degree -- up to fifteen years;
  (b)   For a class A felony -- up to ten years;
  (c)   For a class B felony -- up to five years; and
  (d)   For a class C felony -- up to three years.
  . . . .

[4] HRS §134-21 provides in relevant part:

**[§134-21] Carrying or use of firearm in the commission of a separate felony; penalty.** (a) It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not; . . .
  . . . .
  (b)   A conviction and sentence under this section shall be in addition to and not in lieu of any conviction and sentence for the separate felony; provided that the sentence imposed under this section may run concurrently or consecutively with the sentence for the separate felony.
  (c)   Any person violating this section shall be guilty of a class A felony.

2

failed to qualify them as experts under Hawaii Rules of Evidence (HRE) 702; (3) the circuit court plainly erred in giving a wrong jury instruction regarding opinion testimony, which was modified from a standard expert witness instruction, because there was no expert witness testimony; (4) the circuit court plainly erred in giving an erroneous self-defense instruction; (5) the circuit court plainly erred in failing to give an instruction on defense of property; (6) the circuit court plainly erred in failing to give a cautionary jury instruction regarding medical marijuana; (7) there was insufficient evidence that the shotgun fired by Metcalfe was a "firearm;" and (8) trial counsel rendered ineffective assistance of counsel.

For the reasons discussed below, we affirm.

## I.   **Background**

This case arises from an incident on May 6, 2009, wherein Metcalfe fired a shotgun and Larry Kuahuia (Kuahuia) was killed. Metcalfe was charged with one count of Murder in the Second Degree and one count of Carrying or Use of Firearm in the Commission of a Separate Felony.

On December 7, 2009, Metcalfe filed a motion to dismiss the amended complaint on double jeopardy and collateral estoppel grounds. After a hearing on January 28, 2010, the circuit court issued an order denying the motion to dismiss. The circuit court held that there was "no constitutional or statutory impediment prohibiting the State from proceeding by way of a preliminary hearing when a grand jury has filed a No Bill."

A jury trial was held on February 2, 3, 4, 9, 10, and 11, 2010. The prosecution presented evidence seeking to show, among other things, that decedent Kuahuia was shot in the back and from a distance.

Metcalfe testified in his defense that, at approximately 10:30 p.m., he confronted Kuahuia after an alarm indicated someone was on Metcalfe's property and Metcalfe saw via

3

a surveillance monitor that someone was outside his greenhouse and trying to cut through a shade cloth. The greenhouse contained Metcalfe's tools and medical marijuana plants. After approaching the area with his shotgun, Metcalfe claims that he saw Kuahuia crouched on the ground. Metcalfe claims that he told Kuahuia, among other things, that he had a gun and to get on the ground, but Kuahuia came towards and then jumped toward Metcalfe holding something Metcalfe thought was a cutting instrument. Metcalfe claimed that he pulled the trigger on his shotgun in self-defense.

II. **Discussion**

  A. **No Error In Denying Metcalfe's Motion to Dismiss**

To the extent it can be understood, Metcalfe appears to argue on appeal that, because his trial counsel failed to provide the circuit court with evidence regarding the grand jury and preliminary hearing proceedings, the trial court somehow erred in denying Metcalfe's motion to dismiss without any records or files in evidence. Metcalfe's motion to dismiss had asserted that because probable cause for the charges was found at the preliminary hearing, after a grand jury had previously issued a "no bill," the State was precluded by collateral estoppel and double jeopardy from re-litigating the issue of probable cause. The declaration of Metcalfe's trial counsel, attached to the motion to dismiss, had also claimed that the finding of probable cause in the preliminary hearing was made "when the prosecutor omitted significant evidence that the grand jury heard, some of which was exculpatory from this preliminary examination, and thus [the judge] did not have the benefit of hearing the entire circumstances of the offense."

Metcalfe's opening brief makes the seemingly conflicting argument that a party alleging error has the duty of demonstrating error by bringing the appropriate record before the court, that in this case his trial counsel failed to provide the

4

circuit court with the transcripts from the grand jury and preliminary hearing proceedings, and that the circuit court then abused its discretion by denying the motion to dismiss "without reviewing the evidence." Even if we presume Metcalfe has not waived this point of error for failure to present a discernible argument,[5] he fails on appeal to demonstrate any error by the circuit court. There are no transcripts from the grand jury or the preliminary hearing proceedings in the record on appeal, and therefore Metcalfe makes no showing that the trial court abused its discretion or that he was prejudiced in any way. See State v. Taylor, 126 Hawaiʻi 205, 214, 269 P.3d 740, 749 (2011) ("In cases involving allegations of prosecutorial abuse or misconduct, [the supreme court] has applied an abuse of discretion standard when reviewing a motion to dismiss an indictment.") (citing State v. Mendonca, 68 Haw. 280, 282-83, 711 P.2d 731, 733-34 (1985)).

To the extent Metcalfe's point of error challenges the circuit court's decision on double jeopardy grounds, double jeopardy only applies after "jeopardy" has attached, which in the case of a jury trial occurs when a jury is empaneled and sworn. See Serfass v. United States, 420 U.S. 377, 388 (1975); State v. Quitog, 85 Hawaiʻi 128, 141, 938 P.2d 559, 572 (1997). Metcalfe cannot show that jeopardy attached at the grand jury stage, and his trial counsel conceded as much. Moreover, Metcalfe presents no authority for the proposition that the doctrine of collateral estoppel is applicable relative to his motion to dismiss.

We conclude there is no merit regarding this point of error.

---

[5] See Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 28(b)(7) (Points not argued may be deemed waived); Exotics Hawaii-Kona, Inc. v. E.I. Du Pont Nemours & Co., 116 Hawaiʻi 277, 288, 172 P.3d 1021, 1032 (2007) (A court may disregard points of error when the appellant fails to present "discernible arguments" supporting those assignments of error).

B.    No Plain Error In Allowing the Testimony of
      Dr. Manoukian and Det. Ah Mow

      Metcalfe argues on appeal that the trial court plainly
erred in permitting the testimony of Dr. Manoukian and Det. Ah
Mow because they were both proffered as lay opinion witnesses,
although their respective testimony demonstrated expert
knowledge.  The State never proffered Dr. Manoukian or Det. Ah
Mow as "experts," and the circuit court never expressly qualified
them as such.  Because Metcalfe did not object to Dr. Manoukian
or Det. Ah Mow's testimony, we review Metcalfe's point of error
under the plain error standard of review.  See State v. Staley,
91 Hawai'i 275, 282, 982 P.2d 904, 911 (1999).

> If the substantial rights of the defendant have been
> affected adversely, the error will be deemed plain error.
> Further, [appellate courts] will apply the plain error
> standard of review to correct errors which seriously affect
> the fairness, integrity, or public reputation of judicial
> proceedings, to serve the ends of justice, and to prevent
> the denial of fundamental rights.

State v. Nichols, 111 Hawai'i 327, 334, 141 P.3d 974, 981 (2006)
(internal citation and citation omitted).

      The testimony by Dr. Manoukian and Det. Ah Mow
constituted "expert testimony" governed by HRE Rule 702, because
their testimony involved "scientific, technical, or other
specialized knowledge[.]"  The State does not contest that these
witnesses gave expert testimony.  Dr. Manoukian testified, among
other things: that he performed an autopsy on defendant Larry
Kuahuia, and that in his opinion, "within the bounds of
reasonable medical certainty," Kuahuia died due to a shotgun
wound to the back; that pictures taken during the autopsy showed
"parallel grazing wounds" on each side of Kuahuia's torso, which
indicated the trajectory of the shotgun wound was back to front;
and that the approximate range of firing could be estimated by
multiplying the diameter of the pellet injury times three and

converting it to feet, which was approximately 60 feet in this case.

Det. Ah Mow tested the shotgun that was recovered at the scene, using the same type of ammunition recovered at the scene, to conduct a shotgun pattern test to "determine the distance of . . . the shotgun as the pellets go through the barrel and make a spread pattern onto a target." Det. Ah Mow fired a silhouette target from eight different distances, which demonstrated generally that the spread pattern increased as the distance increased. Det. Ah Mow also testified as to the distances that the shotgun shells were ejected.

We conclude that allowing Dr. Manoukian and Det. Ah Mow to testify without the circuit court designating them as expert witnesses was not plain error. Where a defendant argues for the first time on appeal that failure to formally qualify a witness as an expert is error, but does not argue that the witness is not qualified, or that his or her testimony or methods are inadequate, any such error by the trial court is harmless. See United States v. York, 572 F.3d 415, 421-22 (7th Cir. 2009) (Although FBI agent was not formally qualified by the trial court as an expert witness, any error was harmless. "Notably, [defendant] does not challenge Brown's qualifications, his methods, or the accuracy of his testimony here on appeal. . . . [G]iven Brown's qualifications, and no attempt to disparage them here on appeal, we find that Brown would have easily qualified as an expert had the court conducted the formal Rule 702 analysis."); People v. Lomanaco, 802 P.2d 1143, 1145 (Colo. App. 1990) ("[T]rial court's omission, absent any request by the prosecutor or objection by defense counsel, to qualify the agent specifically as an expert had no adverse effect upon defendant's substantial rights. The foundation questions implied that the agent, whose credentials illustrated his substantial expertise, was proffered as an expert.")

7

Additionally, the testimony by Dr. Manoukian and Det. Ah Mow demonstrates that they qualify as experts under HRE 702, and thus any error in allowing their testimony did not affect the fairness, integrity, or public reputation of the judicial proceedings. See United States v. Mendoza, 244 F.3d 1037, 1046-47 (9th Cir. 2001) (assuming arguendo that the district court erred in admitting testimony as the opinion of a percipient witness when it was expert opinion, such error was harmless because the record showed that the witness could have been qualified as an expert under Rule 702 of the Federal Rules of Evidence); United States v. Figueroa-Lopez, 125 F.3d 1241, 1247 (9th Cir. 1997); United States v. Ramsey, 165 F.3d 980, 984 (D.C. Cir. 1999) (concluding there was no plain error where, "[a]lthough the trial judge never formally qualified [the witness] as an expert witness, his testimony functionally satisfied the requirements for expert testimony set forth in Federal Rule of Evidence 702.").

HRE Rule 702 establishes three conditions for the receipt of expert testimony: (1) the witness must be qualified by knowledge, skill, experience, training, or education; (2) the testimony must have the capacity to "assist the trier of fact to understand the evidence or determine a fact in issue[;]" and (3) the expert's analysis must meet a threshold level of reliability and trustworthiness. See State v. Torres, 122 Hawai'i 2, 31, 222 P.3d 409, 438 (App. 2009) (citations omitted), corrected on other grounds by, 125 Hawai'i 382, 262 P.3d 1006 (2011). In short, the expert testimony must be relevant and reliable. See State v. Fukusaku, 85 Hawai'i 462, 473, 946 P.2d 32, 43 (1997).

In this case, both Dr. Manoukian and Det. Ah Mow are qualified by knowledge, skill, experience, training, or

8

education, as evidenced by their testimony on direct examination.[6] Metcalfe does not dispute their qualifications.

Similarly, it is clear that the disputed testimony was relevant given Metcalfe's theory of self-defense and his claim that he shot at Kuahuia as Kuahuia charged toward him.[7] Metcalfe does not dispute the relevance of Dr. Manoukian and Det. Ah Mow's testimony.

The testimony by Dr. Manoukian and Det. Ah Mow was also reliable. Dr. Manoukian described in detail the basis for his opinion that decedent was shot in the back at an approximate distance of 60 feet, including: parallel sets of grazing wounds on each side of decedent's torso showing a back to front trajectory of the bullets; the spread of numerous entry wounds on the back; the lack of any "large central defect" that would indicate a close-range firing; a general rule of thumb used in pathology whereby the diameter of the pellet injury times three

---

[6] Dr. Manoukian testified *inter alia* that: his occupation is as a pathologist, as the laboratory director at Maui Memorial Medical Center, and also as the coroner's physician for the County of Maui, on the Big Island and also on Kauai; he is a physician and surgeon licensed in the State of Hawai'i; he is certified by the American Board of Pathology in anatomic and clinical pathology and forensic pathology; he has performed over 3,000 autopsies; he has observed in excess of a hundred cases in which the cause of death was injury caused by a firearm; and he has had autopsy training with respect to death due to firearms.

Det. Ah Mow testified that he is a certified firearms instructor for the Hawai'i Police Department; he has been an instructor with the Special Response Team (SRT); he is certified regarding firearms by the FBI and National Rifle Association; and he has had training by the FBI regarding shotguns.

[7] At trial, Dr. Manoukian testified: that he performed an autopsy of Kuahuia; that injuries to Kuahuia's body indicated the trajectory of the shotgun wound and the range of fire; and that Kuahuia's cause of death was a shotgun wound to the back. He testified that the distance from the gun to decedent was approximately 60 feet, and that there was no evidence to indicate that the decedent was shot in the front of his body.

Det. Ah Mow testified that he had test fired Metcalfe's 12 gauge shotgun from various distances to show the spread pattern of the pellets as they hit a cardboard silhouette target. The testimony of Ah Mow generally illustrated that the spread pattern on the targets grew larger at larger distances, and was utilized by the prosecution to support its theory that Metcalfe shot the decedent from a far distance and in the back.

equals a ballpark figure of the distance in feet between the decedent and the barrel of the shotgun; the fact that the only injuries he observed to the front of Kuahuia's body were abrasions or scraping; and there was nothing to indicate Kuahuia was shot in the front of his body.  Dr. Manoukian has qualified as an expert in other cases in this state, including in the area of forensic pathology.  See e.g., State v. Espiritu, 117 Hawai'i 127, 138, 176 P.3d 885, 896 (2008); State v. Cordeiro, 99 Hawai'i 390, 419, 56 P.3d 692, 721 (2002).

Det. Ah Mow testified that the semi-automatic shotgun he used during his test firing was the same shotgun recovered from the crime scene.  He explained that the purpose of the test fire was to determine the distance of the shotgun as the pellets go through the barrel and make a spread pattern onto a target. He shot eight standard police silhouette targets, at distances of 10, 20, 30, 40, 50, 55, 47 feet 8 inches,[8] and 51 feet 1 inch[9]. Det. Ah Mow utilized the same type of ammunition that was recovered from the Metcalfe residence in his test firing.  He described the spread patterns for each distance, which suggested that as the distance from the target increased, the spread pattern also increased.  He also measured the distances between where he shot and where the spent shells fell.  Metcalfe does not challenge the reliability of the testimony.

Metcalfe argues, pursuant to Torres, that the testimony of Dr. Manoukian and Det. Ah Mow was not lay opinion testimony, but rather expert testimony.  As discussed above, we agree with Metcalfe's contention in this regard.  Beyond that, however, Torres is distinguishable.  In Torres, the trial court did not specifically rule on whether certain testimony had been admitted

---

[8]  The distance between a spent shotgun shell and a hacksaw found at the scene.

[9]  The distance between another spent shotgun shell and the hacksaw found at the scene.

10

as lay opinion or expert testimony. 122 Hawai'i at 28, 222 P.3d at 435. On appeal, this court held that the opinion provided by the subject witness required expert testimony, but that the witness did not qualify as an expert under HRE Rule 702 given, *inter alia*, the lack of foundation to qualify him as an expert and his own testimony that he was not an expert in the relevant fields of expertise. Id. at 29-31, 222 P.3d at 436-38. To the contrary in this case, and as discussed above, the testimony of Dr. Manoukian and Det. Ah Mow established their qualifications as expert witnesses relative to their challenged testimony.

The circuit court did not plainly err in allowing the testimony of Dr. Manoukian and Det. Ah Mow.

## C.   **No Plain Error in the Jury Instruction on Opinion Testimony**

Metcalfe argues that the standard jury instruction on expert witness testimony was erroneously modified by the trial court's substitution of the words "opinion testimony" for the word "expert," that the instruction improperly blended HRE Rules 701 and 702, tracked the language of neither rule, and thus ran afoul of both rules. We review the circuit court's jury instructions under the harmless beyond a reasonable doubt standard. See Nichols, 111 Hawai'i at 337, 141 P.3d at 984 ("[A]lthough as a general matter forfeited assignments of error are to be reviewed under the HRPP Rule 52(b) plain error standard of review, in the case of erroneous jury instructions, that standard of review is effectively merged with the HRPP Rule 52(a) harmless error standard of review because it is the duty of the trial court to properly instruct the jury.")

The circuit court gave the following instructions:

> During the trial you heard the testimony of one or more witnesses who were *allowed to give opinion testimony.*
> Training and experience may make a person *qualified to give opinion testimony* in a particular field. The law allows that person to state an opinion about matters in that field. Merely because such a witness has expressed an

> opinion does not mean, however, that you must accept this opinion. It is up to you to decide whether to accept this testimony and how much weight to give it. You must also decide whether the witness's opinions were based on sound reasons, judgment, and information.

(emphasis added).

Hawaiʻi Standard Jury Instruction Criminal (HAWJIC) 4.05 (Dec. 1991), related to expert witnesses, states:

> During the trial you heard the testimony of one or more witnesses who were *described as experts*.
>     Training and experience may make a person *an expert* in a particular field. The law allows that person to state an opinion about matters in that field. Merely because such a witness has expressed an opinion does not mean, however, that you must accept this opinion. It is up to you to decide whether to accept this testimony and how much weight to give it. You must also decide whether the witness's opinions were based on sound reasons, judgment, and information.

(Emphasis added).

The only difference between the instructions given and standard jury instruction HAWJIC 4.05 is that the circuit court: used the phrase "allowed to give opinion testimony" instead of the phrase "described as experts" in the first paragraph; and used the phrase "qualified to give opinion testimony" instead of the phrase "an expert" in the second paragraph. Because the given instructions as a whole accurately state the law, the instructions are not in error. See HRE 702; Territory v. Adelmeyer, 45 Haw. 144, 163, 363 P.2d 979, 989 (1961) ("Experts' opinions vary and the competence, credibility and weight of their testimony is exclusively the province of the jury."); State v. Sawyer, 88 Hawaiʻi 325, 335, 966 P.2d 637, 647 (1998) (holding that a failure to strictly conform to a HAWJIC instruction did not automatically result in incomplete and confusing jury instructions); State v. Mark, 123 Hawaiʻi 205, 219-20, 231 P.3d 478, 492-93 (2010) (appellate courts are not bound by pattern jury instructions).

12

## D.    No Error in the Jury Instruction on Self-Defense

Metcalfe argues that the self-defense instruction was erroneous in that: (1) it lacked a two-part inquiry as required by State v. Van Dyke, 101 Hawai'i 377, 69 P.3d 88 (2003); (2) it did not contain the definition of confinement under HRS § 703-304(6); and (3) the part of the instruction required under State v. Lubong, 77 Hawai'i 429, 886 P.2d 766 (App. 1994) was erroneous.

As to Metcalfe's first contention, the circuit court did not run afoul of Van Dyke. In Van Dyke, the Hawai'i Supreme Court held that the circuit court's self-defense instruction was in error because the defendant expressly disputed whether his use of force constituted "deadly force," but the circuit court instructed the jury only as to justifiable use of "deadly force" and not the justifiable use of "force." 101 Hawai'i at 387-88, 69 P.3d at 98-99.[10] Metcalfe does not assert that, like the defendant in Van Dyke, he disputed whether his use of force constituted deadly force. Therefore, it is arguable whether Van Dyke applies to this case. Even assuming it does, the circuit court did instruct the jury as to the justifiable use of both "force" and "deadly force" in this case.

Metcalfe's second argument is that the self-defense instruction was erroneous in that it did not contain the definition of "confinement" under HRS § 703-304(6), which he contends was applicable to this case. The circuit court did not err in omitting the definition of "confinement" because it was not warranted or applicable. There was no evidence that Kuahuia was confined. Moreover, Metcalfe fails to argue how justifiable confinement would be relevant to the charges brought against him

---

[10]    The supreme court in Van Dyke noted that "force" resulting in death was not necessarily "deadly force," as "such conduct must be accompanied by the requisite state of mind[,]" and thus, the circuit court had erred in taking the question of what degree of force was used out of the hands of the jury. 101 Hawai'i at 387-88, 69 P.3d at 98-99.

of: Murder in the Second Degree; and Carrying or Use of Firearm in the Commission of a Separate Felony (Murder in the Second Degree).

Metcalfe's third argument is that the Lubong portion of the self-defense instruction was erroneous because it used the phrase "reasonably prudent person" rather than "reasonable person." The "reasonably prudent person" language in the instruction is based on Lubong. 77 Hawai'i at 433, 886 P.2d at 770. Metcalfe cites no authority that would overturn Lubong or that suggests that the "reasonably prudent person" standard is materially different from the "reasonable person" standard.

Metcalfe next contends that the self-defense instruction was erroneous because it "omitted the Lubong case's explanation of how to apply the subjective prong." The relevant part of the circuit court's self-defense instruction included the instruction that "[f]or this part of the test, you should place yourself in the shoes of the defendant.". Reading the instructions as a whole, omitting other explanatory language from Lubong was not erroneous.

Finally, Metcalfe argues that the Lubong portion of the instructions was "flawed because it failed to specify that the prosecution had the duty to disprove self-defense beyond a reasonable doubt." Essentially, Metcalfe asserts that, although the self-defense instruction as a whole contained the proper admonition that the prosecution had the duty to disprove self-defense beyond a reasonable doubt, the admonition should have also been contained in the Lubong portion of the instruction. We do not agree. Immediately prior to the Lubong portion of the instructions, the circuit court's instruction stated:

> Justifiable use of force, commonly known as self defense is a defense to the charge of Murder in the Second Degree and Manslaughter. Once there is any evidence of justification, *the burden is on the prosecution to prove beyond a reasonable doubt that the force used by the Defendant was not justifiable.* If the prosecution does not

14

                    meet this burden then you must find the Defendant Not Guilty
                    of Murder in the Second Degree and Manslaughter.

(Emphasis added).

    In sum, the circuit court did not err in its
instructions on self-defense. The instructions, when considered
as a whole, are not prejudicially insufficient, erroneous,
inconsistent, or misleading. See State v. Behrendt, 124 Hawai'i
90, 102, 237 P.3d 1156, 1168 (2010).

E.    **Jury Instruction on Defense of Property Was Not Required**

    Metcalfe argues that the circuit court erred in failing
to instruct the jury on the defense of property, asserting that a
trial court has the duty to *sua sponte* instruct the jury on a
particular defense if: (1) it appears that the defendant is
relying on such a defense; or (2) if there is substantial
evidence supportive of such a defense and the defense is not
inconsistent with the defendant's theory of the case. See State
v. Stenger, 122 Hawai'i 271, 298, 226 P.3d 441, 468 (2010) (Moon,
C.J., dissenting); see also, State v. Yue, 2010 WL 3705983
(Hawai'i App. 2010).

    Metcalfe fails to demonstrate that he relied on the
justification of defense of property. Rather, he argues that the
circuit court should have instructed on the defense of property
because he "did not specifically disavow the defense.". However,
Metcalfe's having not disavowed the defense is not equivalent to
having relied on the defense.

    Additionally, there was not substantial evidence to
support a justification based on defense of property. Metcalfe
argues that his initial conduct in arming himself, confronting
Kuahuia, and his actions up until the point that he discharged
the shotgun, supported a defense of property. Metcalfe is not
charged, however, with the actions prior to discharge of the
shotgun. Rather, the charge of Murder in the Second Degree

15

asserted that he intentionally or knowingly caused the death of Kuahuia, and the charge of Carrying or Use of Firearm in the Commission of a Separate Felony asserted, *inter alia*, that he intentionally used a firearm while engaged in the commission of a separate felony, Murder in the Second Degree. Metcalfe did not contend at trial that he shot at Kuahuia in order to protect his property. Rather, Metcalfe testified that, as Kuahuia was approaching him, he initially fired a warning shot because he was "scared to death," Kuahuia was attacking him, and when asked "were you thinking about your property, or were you thinking about something else," Metcalfe responded "I was thinking about myself.". Metcalfe testified that from the flash of the warning shot, he could see Kuahuia and it appeared Kuahuia was still coming towards him. Metcalfe testified that he subsequently fired the gun again.

The circuit court was not required in this case to give an instruction on defense of property.

F.    **Cautionary Jury Instruction on Medical Marijuana Not Required**

Metcalfe argues, for the first time on appeal, that the circuit court erred in failing to issue a cautionary instruction to the jury in order to "clarify, and clearly impress upon the jury, that there was nothing criminal or wrong, with the possession and use of medical marijuana by Metcalfe, Rocky, and Meech, who all had medical marijuana permits." Metcalfe fails to present any authority that would require the circuit court to give such a "cautionary instruction." Moreover, there was testimony to the effect that permits were issued in Hawaiʻi allowing medical marijuana use, including to Metcalfe. We conclude there was no plain error by the circuit court in not providing a cautionary instruction as asserted by Metcalfe.

G.    **Sufficient Evidence Regarding a Firearm**

Metcalfe argues that there was insufficient evidence that the shotgun was a "firearm" as defined in HRS § 134-1 (1993 Repl.) because "[n]o witness testified that the shotgun was a 'firearm . . . for which the operative force is an explosive[.]'" Metcalfe's argument is without merit. HRS § 134-1 defines "firearm" as "any weapon, for which the operating force is an explosive, **including but not limited to** pistols, revolvers, rifles, **shotguns**, automatic firearms . . . . " (Emphasis added). The definition of "firearm" specifically includes shotguns. Metcalfe testified he pulled the trigger on a shotgun. Even assuming it was necessary that there be additional evidence that "the operating force is an explosive," Metcalfe testified to the bright flash that occurred when he pulled the trigger on the shotgun.

H.    **Ineffective Assistance of Counsel Not Established**

Metcalfe argues that he had ineffective assistance of trial counsel. To prevail on this point, Metcalfe must show both "that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence" and "that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." State v. Wakisaka, 102 Hawai'i 504, 514, 78 P.3d 317, 327 (2003) (citation omitted).

First, Metcalfe argues that trial counsel failed to properly argue and preserve the issue of prosecutorial misconduct "regarding Metcalfe's pre-trial challenge to the re-filing of charges after the grand jury initially returned a 'no bill.'" Metcalfe's argument fails because he does not demonstrate how the prosecutor's re-filing of charges after the grand jury initially returned a "no bill" would constitute prosecutorial misconduct. Metcalfe fails to show error by his trial counsel or that an

17

error resulted in the withdrawal or substantial impairment of a potentially meritorious defense.

Second, Metcalfe argues that his trial counsel failed to object to the admission of numerous physical items of evidence, for which no authentication or relevance was established. Metcalfe fails to identify the items of evidence for which admission should have been challenged, or how failure of his trial counsel to challenge admission detrimentally affected his defense.

Third, Metcalfe argues that his trial counsel failed to object to the testimony of Dr. Manoukian and Det. Ah Mow as improper HRE Rule 701 lay opinion, because they were never qualified as "experts" under HRE Rule 702. The underlying basis for this argument has been addressed above. Given our reasoning and holding that the testimony by Dr. Manoukian and Det. Ah Mow was properly admitted, Metcalfe fails to show there was error by his trial counsel or a withdrawal or substantial impairment of a potentially meritorious defense.

Fourth, Metcalfe argues that his trial counsel were ineffective in that they elicited expert ballistics testimony from a lay police officer witness on cross-examination, and violated HRE Rules 701 and 702. Metcalfe fails to articulate or specify the portions of Officer Smith's testimony that was allegedly detrimental to his defense. He also fails to demonstrate that the testimony elicited from officer Smith was "expert" testimony. Although Metcalfe suggests that Officer Smith's testimony resulted in the "'firearm' element possibly being proved through cross-examination," as discussed above, the definition of "firearm" includes a shotgun, and moreover, Metcalfe's testimony provided sufficient evidence that he used a firearm.

Fifth, Metcalfe argues that his trial counsel were ineffective in that they failed to object to the measurements

from the Total Station device, which they challenged as unreliable. Again, Metcalfe fails to explain how his trial counsels' alleged failure to object to the measurements resulted in the substantial impairment of his defense.

Sixth, Metcalfe argues that trial counsel were ineffective in failing to question Dr. Manoukian regarding whether a gunshot residue test was performed on decedent Kuahuia, because "[t]he presence of gunshot residue on Decedent's hands would contradict the prosecution's theory that the shotgun was fired from a 60-foot distance[.]" Even if we were to assume that a gunshot residue test was in fact performed on the decedent, Metcalfe's implicit assumption that gunshot residue was on the decedent's hands is highly speculative and not supported by evidence in the record. Metcalfe has not demonstrated that the failure to question Dr. Manoukian regarding gunshot residue on the decedent impaired a meritorious defense.

Seventh, Metcalfe argues that trial counsel were ineffective in failing to object to, or exclude *in limine* before trial, the prosecution's photograph and questioning about medical marijuana. Alternatively, Metcalfe asserts his trial counsel should have requested a cautionary instruction about medical marijuana. Metcalfe's arguments lack merit. Metcalfe's marijuana usage at the time of the incident was relevant to his conduct, perception of events, and his ability to remember events. Metcalfe also fails to explain how the photograph or questioning about marijuana substantially impaired a meritorious defense. Further, as discussed above, there is no legal authority supporting the cautionary instruction Metcalfe asserts should have been given regarding medical marijuana.

Eighth, Metcalfe argues that his trial counsel were ineffective because they failed to request a defense of property instruction. As discussed above, a defense of property

instruction was not warranted in this case. Failure to request the instruction did not constitute ineffective assistance of trial counsel.

## III. Conclusion

Based on the foregoing, we affirm the judgment entered by the circuit court on March 25, 2010.

DATED: Honolulu, Hawai'i, March 30, 2012.

On the briefs:

Karen T. Nakasone
Deputy Public Defender
for Defendant-Appellant

Ricky R. Damerville
Deputy Prosecuting Attorney
County of Hawaii
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge